UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY TRAPP,

                Plaintiff,                      Case No. 1:21-cv-11271

v.                                      Honorable Thomas L. Ludington
                                      United States District Judge

FEDERAL EXPRESS CORPORATION,

                Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, DENYING WITHOUT PREJUDICE DEFENDANT'S
MOTION IN LIMINE, AND GRANTING DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY**

In January 2021, Plaintiff Anthony Trapp, a swing courier for Defendant Federal Express, requested a seatbelt extender to fasten his seatbelt in some of Defendant's delivery trucks. Defendant denied Plaintiff's request and then demoted him to a dangerous-goods operator.

When Plaintiff, who otherwise satisfactorily performed his duties, asked how to regain his swing-courier position, his supervisor responded that he must "loose [sic] some weight."

Alleging weight discrimination, Plaintiff sued Defendant under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2101 *et seq*., and Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), MICH. COMP. LAWS § 37.1202(1)(b). Defendants have filed motions for summary judgment and to exclude certain email evidence and expert testimony.

**I.**

In December 2020, Defendant Federal Express hired Plaintiff Anthony Trapp as a swing courier. ECF No. 31-2 at PageID.598. As such, Plaintiff did not have an assigned route and would cover different routes for couriers who needed help or could not work. *Id.* at PageID.611. Plaintiff,

like all swing couriers, did not have an assigned delivery vehicle; his vehicle changed with his route. *Id.* at PageID.618.

Weighing approximately 450 pounds, *id.* at PageID.644, Plaintiff could not buckle his seatbelt in some delivery vehicles, *id.* at PageID.613. On days Plaintiff could not buckle the seatbelt of his assigned vehicle, Defendant would reassign Plaintiff to work in the warehouse while earning his swing-courier pay. *Id.* at PageID.620.

In early January 2021, Plaintiff requested a seatbelt extender so that he could work any route. He submitted a "Reasonable Accommodation Request" form, ECF No. 29-7 at PageID.437, to his supervisor, Brandon Scharich, who forwarded it to corporate human resources: Human Capital Management Program (HCMP), ECF No. 31-2 at PageID.624–26. In January and February 2021, HCMP employees discussed Plaintiff's request via email. *See* ECF Nos. 31-7; 31-9.

Although Plaintiff did not require an extender in every vehicle, Defendant denied his accommodation request in late February 2021 because "not all vehicle manufacturers offer a larger seat belt that can be installed in all FedEx vehicle assets." ECF No. 29-7 at PageID.438.

On March 4, 2021, Scharich and two other managers met with Plaintiff to inform him that because Defendant could not accommodate Plaintiff's request for a seatbelt extender,[1] Plaintiff would be moved to a different position. ECF No. 31-2 at PageID.659. Eight days later, Plaintiff texted Scharich: "[W]hat is the circumstance that I need to change in order to drive again?" ECF No. 29-16 at PageID.527. Scharich texted back: "So you'll have to loose [sic] some weight. How much that has to be I truly don't know." *Id.* at PageID.528.

---

[1] The parties dispute whether Defendant could have accommodated Plaintiff's request. *See* ECF No. 31 at PageID.545.

Six days later, Plaintiff began working as a dangerous-goods operator, working fewer hours for less money. ECF No. 29-7 at PageID.441. Twenty-one days later, he resigned. ECF No. 29-7 at PageID.441

Five days after resigning, Plaintiff sued Defendant in the Saginaw County Circuit Court, alleging Defendant violated the ELCRA and PWDCRA by demoting him because of his weight. *See* ECF No.1-1. Defendant removed the case to this Court in May 2021. ECF No. 1.

Defendant filed a motion for summary judgment, ECF No. 29, a motion *in limine* to exclude HCMP emails, ECF No. 37, and a motion to exclude the testimony of Plaintiff's expert on environmental health and safety, Luke G. Contos, ECF No. 26. All three motions will be addressed in turn.

## II.

### A.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden of "identifying" the record evidence "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). A genuine issue of fact requires more than "a mere scintilla of evidence," *id.* at 251, more than "some metaphysical doubt," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the nonmovant to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

Summary judgment will be granted if the nonmovant fails to establish a genuine issue of material fact on the elements of its case that the moving party has challenged. *See Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied if the challenged elements have "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

## B.

Plaintiff alleges in his first claim that Defendant discriminated against him under the PWDCRA based on a perceived disability: his weight. Plaintiff alleges Defendant perceived his weight as a disability because he was "advised that a seatbelt extender needed to be followed with an accommodation request" to address his perceived disability. ECF No. 31 at PageID.551.

### 1.

Under the PWDCRA, employers may not "discriminate against an individual . . . because of a disability . . . that is unrelated to the individual's ability to perform the duties of a particular job or position." MICH. COMP. LAWS § 37.1202(1)(b) (2000).

To succeed on a "perceived-disability" claim, Plaintiff must demonstrate that Defendant

(1) regarded Plaintiff as having a determinable physical or mental characteristic,
(2) regarded Plaintiff's perceived characteristic as substantially limiting one or more of his major life activities, and
(3) considered Plaintiff's perceived characteristic to be unrelated to his ability to perform the duties of a particular position or to his qualifications for employment or promotion.

*Michalski v. Reuven Bar-Levav*, 625 N.W.2d 754, 760 (Mich. 2001).

- 4 -

**2.**

Defendant did not regard Plaintiff's weight as "substantially limiting one or more of [his] major life activities." Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning[,] and working." *Stevens v. Inland Waters, Inc.*, 559 N.W.2d 61, 64 (Mich. Ct. App. 1996). Plaintiff has not even alleged a specific "major life activity" that his weight apparently limited, much less that Defendant perceived it as such. *See* ECF Nos. 1-1 at PageID.17; 31 at PageID.550–52.

Read in his favor, however, Plaintiff might be arguing Defendant perceived his weight as "substantially limiting" his ability to work. But that argument would also fail. Despite Plaintiff's inability to drive some vehicles due to his weight, and therefore the need for a larger seatbelt, Defendant nevertheless permitted him to sort packages and, after demoting him, to be a dangerous-goods operator. ECF Nos. 31-2 at PageID.620; 31-10 at PageID.843.

And Plaintiff's weight did not prevent him from working. *See* ECF No. 31-2 at PageID.606 (testifying that he worked at McDonald's while working for Defendant). Because his weight did not prevent him from performing other satisfactory work, Plaintiff's PWDCRA claim fails. *See Chiles v. Mach. Shop, Inc.*, 606 N.W.2d 398, 407–08 (Mich. Ct. App. 1999) (per curiam) (first citing *Stevens*, 559 N.W.2d at 64; and then citing *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997)); *see also Donahoo v. Master Data Ctr.*, 282 F. Supp. 2d 540, 549 (E.D. Mich. 2003) (holding that, though an impairment might have interfered with a person's ability to perform certain jobs, it did not limit the "major life activity" of working if "it did not impair [the person] from performing other satisfactory work").

Plaintiff's weight, by his own admission, was directly related to his ability to perform his duties as a swing courier. "It is not considered discrimination under the PWDCRA to refuse to

accommodate an employee whose disability is directly related to the employee's ability to perform the duties of her job." *Hawkins v. Genesys Health Sys.*, 704 F. Supp. 2d 688, 700 (E.D. Mich. 2010) (citing *Carr v. Gen. Motors Corp.*, 389 N.W.2d 686, 690 (Mich. 1986)); *accord Hamilton v. Consumers Energy Co.*, No. 266866, 2006 WL 2271055, at *3 (Mich. Ct. App. Aug. 8, 2006) (unpublished) (holding that an adverse action based on a disability does not violate the PWDCRA if the disability prevented the performance of "an essential part of [the] job").

In sum, Plaintiff cannot demonstrate that Defendant regarded his weight as substantially limiting one or more of his major life activities or that Defendant considered his weight to be unrelated to his ability to perform the duties as a swing courier. Accordingly, his PWDCRA claim will be dismissed with prejudice.

### C.

Plaintiff next alleges Defendant violated the ELCRA by demoting him based on his weight.

### 1.

Under the ELCRA, an employer may not "[f]ail or refuse to hire or [to] recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, *weight*, or marital status." MICH. COMP. LAWS § 37.2202(1)(a) (emphasis added); *see also* Sarah A. Schade, Note, *"The Stakes of Employment:" The Importance of Amending the Elliott-Larsen Civil Rights Act to Include Independent Contractors*, 67 WAYNE L. REV. 601, 632 (2022) (noting that Michigan is "the only state providing anti-discrimination protection on" the basis of weight).

Discriminatory treatment may be proven with either direct or indirect and circumstantial evidence. *Sniecinski v. BCBS of Mich.*, 666 N.W.2d 186, 192–93 (Mich. 2003).

Direct evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (quoting *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520 (Mich. 2001)). In mixed-motive cases, where the adverse action is based on both legitimate and unlawful reasons, the "plaintiff must prove that the defendant's discriminatory animus was more likely than not a 'substantial' or 'motivating' factor." *Id.*

By contrast, indirect-evidence claims apply the burden-shifting framework from *McDonnell Douglas*. *Id.* at 193. A *prima facie* indirect-evidence case requires the plaintiff to prove he (1) "belongs to a protected class," (2) "suffered an adverse employment action," (3) "was qualified for the position," and (4) failed "to obtain the position . . . under circumstances giving rise to an inference of unlawful discrimination." *Id.* A plaintiff can satisfy the fourth element by demonstrating he was "treated differently from similarly situated employees outside the protected class." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004).

"If the plaintiff succeeds in establishing a prima facie [indirect-evidence] case," then the burden "shifts to the employer to articulate a legitimate, nondiscriminatory rationale." *In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007) (citing *Hazle*, 628 N.W.2d at 521–22). If the employer does so, then "the burden shifts back to the plaintiff to demonstrate that the articulated reason is a mere pretext." *Id.* (citing *Hazle*, 628 N.W.2d at 522). The employer's proffered reasons are pretext if they "(1) had no basis in fact, (2) were not the actual factors motivating the decision, *or* (3) were insufficient to justify the decision." *Cuddington v. United Health Servs., Inc.,* 826 N.W.2d 519, 526 (Mich. Ct. App. 2012) (per curiam) (emphasis added) (citing *Dubey v. Stroh Brewery Co.*, 462 N.W.2d 758, 760 (Mich. Ct. App. 1990) (per curiam)).

**2.**

Plaintiff's ELCRA claim does not survive summary judgment as a direct-evidence case.

Plaintiff asserts Scharich's March 12, 2021 text message is direct evidence of discrimination. *See* ECF No. 29-16 at PageID.528 ("So you'll have to loose [sic] some weight."). Defendant responds that the text is not direct evidence because Scharich was not a decisionmaker involved in Plaintiff's demotion. ECF No. 29 at PageID.372.

"[A] single remark from a supervisor in the context of a discussion regarding plaintiff's [adverse employment action], even if the statement might be subject to multiple interpretations, is sufficient to constitute direct evidence." *Wolfgang v. Dixie Cut Stone and Marble, Inc.*, No. 285001, 2010 WL 199595, at *2 (Mich. Ct. App. Jan. 21, 2010) (per curiam) (unpublished) (citing *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 838–39 (2001) (per curiam)).

But a single remark by a supervisor is not *always* direct evidence and may sometimes be merely a "stray remark." *See id.* In evaluating whether a statement by a supervisor is direct evidence or a stray remark, courts must consider four factors:

(1) whether the remark was made by a person involved in the termination decision,
(2) whether the remark was made during the decisionmaking process,
(3) whether the remark was vague, ambiguous, or isolated, and
(4) whether the remark was proximate in time to the adverse employment action.

*Id.*

There is no dispute that Scharich's remark was unambiguous and made after the adverse employment action. Further, considering Plaintiff's testimony that Scharich and two other managers told him that "they" would offer him a different position, ECF No. 31-2 at PageID.659, and intracompany emails showing that Scharich—not HCMP—was responsible for choosing Plaintiff's new position, ECF No. 31-5 at PageID.832–35, a reasonable juror could conclude that Scharich was involved in the decision to demote plaintiff.

But, dispositively, Scharich made the statement eight days *after* Plaintiff was informed that he would be demoted. Because the statement was not made before or during the decisionmaking

process, it was not proximate in time to Plaintiff's demotion. *See Lowe v. Walbro LLC*, 972 F.3d 827, 833 (6th Cir. 2020) (holding that a supervisor's statement "made at the meeting in which [plaintiff] was fired . . . . is, if anything, even stronger [evidence of discrimination] than in *DeBrow* because [it] was made in direct response to [the plaintiff's] question about why he was being fired" (citing *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 838–39 (Mich. 2001))); *Downey v. Charlevoix Cnty. Bd. of Rd. Comm'rs*, 576 N.W.2d 712, 718 (Mich. Ct. App. 1998) (same for predecisional statements). Indeed, as one scholar has explained, "courts should not try to infer predecisional intent from postdecisional statements" because "postdecisional statements can truly demonstrate only postdecisional intent." Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 22–23 (2022). And the parties have not identified any case in which a court applying Michigan law has determined that a statement made *after* the adverse employment action was direct evidence.

In sum, because Scharich's statement was made eight days after Plaintiff's demotion, it is merely a stray remark and cannot be direct evidence of discrimination.

### 3.

Yet Plaintiff's ELCRA claim survives summary judgment as an indirect-evidence case. He has established a *prima facie* case of weight discrimination. He belongs to the protected class of overweight people, and he was adversely demoted from swing courier to dangerous-goods operator. *See* discussion *supra* Section I. Third, a reasonable juror could conclude that he was qualified for the swing-courier position. *See* ECF No. 31-2 at PageID.605 (testifying that he passed the required physical); *id.* at PageID.662 (testifying that supervisors said he was adequately performing). And fourth, based on Scharich's text, a reasonable juror could conclude that

Plaintiff's adverse employment action was based on his weight. *See* ECF No. 29-16 at PageID.528 ("So you'll have to loose [sic] some weight. How much that has to be I truly don't know.").

Defendant responds it legitimately demoted Plaintiff because Federal Express does not permit aftermarket parts on company vehicles, and only some of the vehicles at issue have OEM seatbelt extenders available. ECF Nos. 29 at PageID.357; 31-6 at PageID.836; 34 at PageID.874. That is, it was impossible to put OEM seatbelt extenders in all the vehicles: arguably legitimate if true.

Plaintiff contends Defendant's rationale is pretext because it is factually false and was not Defendant's actual motivation. Specifically, Plaintiff avers OEM seatbelt extenders *are* available for the only vehicle for which Plaintiff required and requested a seatbelt extender. *See* ECF No. 31-13 at PageID.849–50. In this way, drawing all reasonable inferences in Plaintiff's favor, Defendant's proffered reason is unsubstantiated, or, at least, not true without a reasonable factual question. *See Cuddington v. United Health Servs., Inc.,* 826 N.W.2d 519, 526 (Mich. Ct. App. 2012) (per curiam).

Plaintiff is correct that there are questions of fact about the number of vehicles for which he required a seatbelt extender and whether OEM extenders for those vehicles were available.[2] Defendant maintains it denied Plaintiff's accommodation request because "not *all* vehicle manufacturers offer a larger seat belt that can be installed in all FedEx vehicle assets." ECF No. 29-7 at PageID.438 (emphasis added). But Plaintiff testified that he could not engage the seatbelt in the Chevrolet "converted 15 passenger van" and that he was able to engage the seatbelt in other

---

[2] There is also a question of fact about how many different vehicles Plaintiff was expected to drive as a swing courier. He testified that there were 40 vehicles in Defendant's fleet. *See* ECF No. 31-2 at PageID.612–13. But it is not clear from the record *exactly* how many different vehicles or models were in the fleet.

vehicles. ECF No. 31-2 at PageID.613–14. And Plaintiff has provided evidence that OEM seatbelt extenders were available for the Chevrolet Express Van. ECF No. 31-13 at PageID.849–50. From this evidence, a reasonable juror could conclude that Plaintiff needed an extender for only the Chevrolet Express and that OEM extenders were available for those vans. Under that view, Defendant's reasoning that it could not provide OEM extenders for all vehicles could be found by a jury to be pretextual.

And there is a question of fact not only about the contents of Defendant's policy regarding seatbelt extenders but also whether such a policy even exists. Despite Defendant's repeated assertion that it only permits OEM parts, *passim* ECF Nos. 29; 34, the record includes conflicting testimony about Defendant's practice of granting requests for seatbelt extenders. On the one hand, Defendant's Managing Director of Safety averred that Defendant's safety department will only approve OEM seatbelt extenders. ECF No. 29-1 at PageID.376–77. On the other hand, Defendant told Plaintiff in February 2021 that "seat belt extenders are not endorsed or recommended by Corporate Safety." ECF No. 29-7 at PageID.438. And Michael Bill—the safety advisor who reviewed Plaintiff's accommodation request—testified that there was no written policy against seatbelt extenders, ECF No. 31-3 at PageID.791, but at some point "the edict" was communicated to his department that "[Defendant] wasn't going to entertain seatbelt extenders," ECF No. 31-3 at PageID.782. But Bill also testified that he received emails from the regional manager of HCMP that seatbelt extenders have been approved at other locations in the past, *id.* at PageID.787, which Defendant admits, *see* ECF No. 34-1 at PageID.877 (stating that Defendant had previously provided OEM seatbelt extenders to two other employees in early 2020).

Because the record does not reflect a clear company policy about the use of seatbelt extenders, a reasonable juror could conclude that Defendant did not have one and that Defendant's rationale is merely pretext.

### 4.

Because questions of fact remain under the indirect-evidence framework, Defendant's motion for summary judgment on Plaintiff's ELCRA claim will be denied. Having narrowed the scope of Plaintiff's Complaint to one ELCRA claim, Defendant's motion *in limine* and motion to exclude expert testimony will now be addressed.

### III.

Defendant seeks to exclude "any inquiry by counsel or introduction of testimony regarding the racial implications" of the January 20, 2021 email sent by Defendant's employee Michael Bill. ECF No. 36 at PageID.892. As explained below, the motion will be granted.

### A.

"A 'motion in limine' is any motion 'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Good v. BioLife Plasma Servs., L.P.*, No. 1:18-CV-11260, 2022 WL 1837071, at *2 (E.D. Mich. June 3, 2022) (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)). They are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (same). Trial courts may "conditionally grant a motion in limine, leaving the underlying evidentiary issue open to be revisited at trial." *Fischer v. United States*, No. 1:19-CV-13020, 2022 WL 2287922, at *2 n.2 (E.D. Mich. June 24, 2022) (citing *The Modern Workplace: Contemporary Legal Issues in Employment & Labor Law Local Panel Discussion*, 6 BELMONT L. REV. 245, 261–62 (2019)).

"[E]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Unless expressly prescribed by another evidential rule, relevant evidence is admissible. FED. R. EVID. 402; *Frye v. CSX Transp., Inc.*, 933 F. 3d 591, 599 (6th Cir. 2019).

"[A] trial court may exclude relevant evidence if its probative value is substantially outweighed by the risk of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needless presenting cumulative evidence." FED. R. EVID. 403. But evidence is not excluded as being unfairly prejudicial merely because it damages the party against whom it is offered. Rather, "unfair prejudice" under Rule 403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

**B.**

The "cartoon" that Defendant seeks to exclude is a photo[3] of two men juggling a potato:



HCMP employees used the image in a January 2021 email discussing Plaintiff's accommodation request. *See* ECF No. 36-2 at PageID.897–98.

---

[3] Notably, the image is the second result in a Google Image search for "hot potato," and is accompanied by instructions for playing the game "hot potato."

The scope of Defendant's motion *in limine* is unclear. At first seeking to exclude "any argument or discussion of the 'hot potato' cartoon contained in Michael Bill's January 20, 2021 email," ECF No. 36 at PageID.883, Defendant later narrows the requested relief to exclude "any inquiry by counsel or introduction of testimony regarding the [email's] *racial implications*," *id.* at PageID.892 (emphasis added).

Plaintiff responds that the email is probative of weight discrimination because it demonstrates that Defendant did not take Plaintiff's accommodation request seriously "because of his size." ECF No. 37 at PageID.907.

The email is relevant because it increases the likelihood that Defendant's employees did not take Plaintiff's request seriously, did not want to handle his request, and did not know the company policy regarding seatbelt extenders. *See* ECF No. 36-2 at PageID.897–98 (asking Bill to confirm "Safety's official position on the seatbelt extension request," to which Bill responded "Here we go…….HOT Potato!") Thus, the email makes it more likely not only that Defendant's proffered rationale for denying Plaintiff's request and demoting him is pretextual, but also that Defendant discriminated against Plaintiff because of his weight. *See* FED. R. EVID. 402.

Defendant argues there is a risk of unfair prejudice or confusion because the email and image might suggest racial animus. If the email had anything to do with race, then it might confuse the jury, as Plaintiff is not pursuing a race-discrimination case. *See generally* Tori DeAngelis, Feature, *Unmasking 'Racial Micro Aggressions*,*'* Feb. 2002, AM. PSYCH. ASS'N, at 42 (2009) (discussing the "emotional toll" of racial microaggressions).

But Plaintiff will not rely on the email or the "hot potato" photo to introduce testimony about race. *See* ECF No. 37 at PageID.903. Even if Plaintiff did intend to elicit some testimony about race, the "hot potato" photo has nothing to do with race. "Hot potato" is an idiom about

- 14 -

juggling a problem you don't want to deal with. *E.g.*, Vince Blasi, *A Requiem for the Warren Court*, 48 TEX. L. REV. 608, 616 (1970) (characterizing the "political question" doctrine as the Supreme Court's way to "dodge[] political hot potatoes"). Accordingly, there is no risk of confusion or prejudice, and even if there was, it does not substantially outweigh the email's probative value. *See* FED. R. EVID. 403.

Accordingly, Defendant's motion *in limine* will be denied without prejudice.

## IV.

Lastly, Defendant seeks to exclude testimony from Plaintiff's proposed expert, Luke G. Contos, an expert of environmental health and safety and the owner of consulting firm SustainabilitySystems. ECF No, 26-2 at PageID.188. As explained hereafter, Contos's testimony will be excluded.

## A.

Federal Rule of Evidence 702 governs the admissibility of expert testimony as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

In essence, Rule 702 assigns the district court "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"—a kind of "gatekeeping role." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In performing this role, district courts often consider several factors that the *Daubert* Court identified, including whether the expert's methods are testable and subject to peer review. *Id.* at 593–94; *see*

*also United States v. Bonds*, 12 F.3d 540, 558 (6th Cir. 1993) (identifying and discussing the so-called "*Daubert* factors"). But importantly, the *Daubert* factors neither "constitute 'a definitive checklist or test'" nor apply in every case. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 593). "The gatekeeping inquiry is context-specific and 'must be tied to the facts of a particular case.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) (quoting *Kumho Tire*, 526 U.S. at 142).

In some cases, like here, proposed expert testimony is based on specialized experience and training rather than some empirical test. This expertise is not unusual, as "experience is the predominant, if not sole, basis for a great deal of reliable expert testimony" in some fields. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment). Yet experience-based expert testimony requires a slightly different analysis. *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding *Daubert* factors "unhelpful" because expert's testimony was based on his "own practical experiences throughout forty years in the banking industry").

Rather than asking whether the testimony is "falsifiable," *see Daubert*, 509 U.S. at 593, this Court must determine whether Contos has adequately explained "how [his] experience leads to the conclusion reached . . . and how [his] experience is reliably applied to the facts," *see Thomas*, 398 F.3d at 432 (omission in original) (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment). Although the Sixth Circuit endorses a "liberal" application of Rule 702, "a witness is [not] an expert simply because he claims to be." *Hendrian v. Safety-Kleen Sys., Inc.*, No. CV 08-14371, 2014 WL 12658969, at *3 (E.D. Mich. Jan. 17, 2014) (quoting *Berry v. Crown Equip. Corp.*, 108 F. Supp. 2d 743, 749 (E.D. Mich. 2000)). At bottom, Contos's experience and training "must provide a foundation for [him] to answer the specific question[s]" in his expert

report. *See Smith v. Nexus RVs, LLC*, 472 F. Supp. 3d 470, 480 (N.D. Ind. 2020) (citing *Gayton v. McCoy*, 593 F.3d 610, 617–18 (7th Cir. 2010)).

**B.**

Defendant advances three reasons to exclude Contos's opinion testimony: (1) his expert report does not contain reasons and bases for his opinions, (2) his opinions are "with the common knowledge of an ordinary layperson," and (3) he is not qualified as an expert. ECF No. 26 at PageID.139.

There is no question that Contos is an expert of workplace standards for environmental health and safety (EHS). *See* ECF No. 26-2 at PageID.188. He has a Bachelor of Science in Environmental Science, a Master of Science in Environmental Engineering, and more than 30 years' experience in various EHS roles in the automotive-manufacturing industry. *Id.*

But Contos has no experience with safety standards or seatbelt regulations for motor-vehicle carriers—the questions he directly addresses in his expert report. *See generally id.* Indeed, though Plaintiff's counsel retained Contos to opine on the applicable OSHA regulations "for an employee regarding driving a commercial vehicle," ECF No. 26-2 at PageID.185, Contos testified he is not "an expert in vehicular motor safety" or "the intricacies of a seatbelt," *id.* at PageID.184. And his "expert qualifications" are completely devoid of anything outside the realm of EHS. *Id.* at PageID.188–89. Even if he had read some relevant OSHA regulations through his EHS work in the automotive-manufacturing industry, which he has not said, that would mean nothing in the context of vehicular-motor safety or seatbelt intricacies. Although, at some conjured level of generality, environmental compliance might involve the same regulatory scheme as the safety of seatbelts, which is unclear, they live in wholly different realms of experience. *See Counts v. Gen. Motors, LLC*, No. 1:16-CV-12541, 2022 WL 2078023, at *25 (E.D. Mich. June 9, 2022)

- 17 -

("Yet an Apache helicopter crew chief likely could not testify to the mechanical intricacies of the Blackhawk helicopter; though similar, they are different systems.").

Accordingly, Contos is not qualified to testify as an expert on safety regulations for delivery vehicles and his testimony will be excluded.

**V.**

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 29, is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion is **GRANTED** with respect to Plaintiff's PWDCRA claim. Defendant's Motion is **DENIED** in all other regards.

Further, it is **ORDERED** that Plaintiff's PWDCRA claim (Count II), ECF No. 1-1, is **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that Defendant's Motion in Limine, ECF No. 36, is **DENIED WITHOUT PREJUDICE**.

Further, it is **ORDERED** that Defendant's Motion to Exclude Luke Contos's Expert Testimony, ECF No. 26, is **GRANTED**.  Luke Contos may not offer opinion testimony.

**This is not a final order and does not close the case.**

Dated: December 1, 2022                          s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge